IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
:
UNITED STATES OF AMERICA         :
:
:
v.                               :            No. 98-cr-520-PJM
:
:
DUSTIN JOHN HIGGS                :
_____:

MEMORANDUM IN OPPOSITION
TO MOTION TO AMEND JUDGMENT AND ORDER

On August 4, 2020, the Government filed a motion requesting that the Court amend Mr. Higgs's judgment of conviction to designate Indiana as the state in which Mr. Higgs should be executed. ECF No. 640 at 2. The request should be denied. Criminal judgments may not be modified except in limited circumstances and the Government has not explained why that prohibition does not govern here. Even if the Court possesses the authority to modify Mr. Higgs's judgment, the Court should not designate Indiana for the implementation of his death sentence. Mr. Higgs instead requests that the Court designate Virginia, which would constitute a more logical and practical designation.

**A. The Court lacks the authority to modify Mr. Higgs's judgment of conviction.**

As the Government notes, Maryland authorized the death penalty as a punishment at the time Mr. Higgs was sentenced, but no longer does. *Id.* at 2; *see also* S.B. 276, 2013 Leg., 433rd Sess. (Md. 2013) (abolishing death penalty). Because 18 U.S.C. § 3596 takes a differential approach to the implementation of federal death sentences that depends on whether the state in which the conviction arises authorizes the death penalty as a matter of state law, Mr. Higgs's judgment is now invalid as it relates to his death sentence. As the Government concedes, "[t]he

U.S. Marshal cannot implement sentence based on a non-existent statute." ECF No. 640 at 2. The Government has thus moved to amend Mr. Higgs's judgment of conviction to designate Indiana as the state in which to implement the death sentence. *Id.*

The Government has not shown that the Court has the authority or jurisdiction to modify Mr. Higgs's criminal judgment, however. The Court possesses no such authority. A "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)) (alteration in original); *see also United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed."). Specifically, "[a]fter sentence has been imposed, the district court may not alter the sentence except as authorized by Fed. R. Crim. P. 35 or 18 U.S.C.A. § 3582(c)." *United States v. Griffin*, 60 F.3d 826 (4th Cir. 1995) (Table); *accord United States v. Fraley*, 988 F.2d 4, 6 (4th Cir. 1993).

The Government did not acknowledge the prohibition on modifying criminal judgments in its motion, nor did it suggest which of the limited exceptions would apply to permit a sentence modification in Mr. Higgs's case. Mr. Higgs is aware of none. Federal Rule of Criminal Procedure 35 permits corrections for clear error or reductions in sentence for substantial assistance to the Government, neither of which is applicable here.[1] And section 3582(c) permits sentencing reductions for "extraordinary and compelling reasons," § 3582(c)(1)(A)(i), or for prisoners over 70 years of age who have served at least 30 years in prison where certain other

---

[1] Rule 35 sentence corrections or reductions must also occur within fourteen days or one year of sentencing, respectively. Fed. R. Crim. P. 35(a), (b)(1). These deadlines have long passed in Mr. Higgs's case. Later motions for sentence reduction are permitted only in limited circumstances not applicable here. *See* Fed. R. Crim. P. 35(b)(2).

criteria are met, § 3582(c)(1)(A)(ii), and sentencing modifications that are "otherwise expressly permitted by statute" or Rule 35, § 3582(c)(1)(B), or in certain circumstances where sentencing ranges have been lowered by the United States Sentencing Commission, § 3582(c)(2). None of these limited exceptions applies in Mr. Higgs's case, and the Government does not suggest otherwise. In the absence of an applicable exception, the Court lacks jurisdiction to modify Mr. Higgs's judgment. *See United States v. Washington*, 549 F.3d 905, 916-17 (3d Cir. 2008) (district court lacked authority to vacate sentence procured by defendant's fraudulent impersonation of another individual because it had no inherent power to modify sentence for reason not enumerated in Rule 35 or section 3582(c)).

In effect, the Government is asking the Court to resentence Mr. Higgs as a result of factual and legal developments that have occurred since his judgment of conviction was entered. But "a sentence in all respects legal cannot be increased after service has begun." *Borum v. United States*, 409 F.2d 433, 440 (D.C. Cir. 1967). The "general rule is that an increase in sentence after the defendant has commenced serving his punishment is a violation of [the] defendant's right not to be subject to double jeopardy." *United States v. Benefield*, 942 F.2d 60, 66 (1st Cir. 1991) (quoting *United States v. Bynoe*, 562 F.2d 126, 128 (1st Cir. 1977)) (alteration in original).

The Court lacks the authority to amend Mr. Higgs's judgment, and the Government has not even attempted to demonstrate otherwise.[2] And the Government's suggestion that it already has the authority to implement a judgment that is invalid under section 3596 as a result of its

---

[2] Given the cursory nature of the Government's motion and the lack of meaningful support for its proposed relief, Mr. Higgs may move for permission to file a surreply should the Government file a reply advancing new arguments. *See* Local Rule 105(2)(a) (prohibiting surreplies unless otherwise ordered by the Court).

duty to "take care that the laws are faithfully executed" is plainly wrong. ECF No. 640 at 2. The Government's motion should be denied.

### B. The Court should not designate Indiana in any event.

Even if there were a source of authority and jurisdiction for the Court to modify Mr. Higgs's final judgment years after the fact, the Court should not designate Indiana as the state in which to implement Mr. Higgs's sentence. The Government offers no rationale for selecting Indiana other than mentioning that it is the state in which the Government, in its sole discretion, has elected to incarcerate Mr. Higgs. ECF No. 640 at 2. But that bare fact does not outweigh the myriad reasons why Indiana is ill-suited for this designation.

In *United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004), the United States District Court for the District of Massachusetts faced this precise issue in a Federal Death Penalty Act prosecution. Massachusetts, like Maryland, does not authorize the death penalty as a matter of state law. The district court in *Sampson* was thus charged with designating a state in which to implement the defendant's execution under 18 U.S.C. § 3596, and the Government similarly requested Indiana. *Id.* at 279-80. The district court did not accede to the Government's request and instead designated New Hampshire. *Id.*

While the court acknowledged that it "would be more convenient for the government to execute Sampson in Indiana," it made clear that section 3596 provides "that a court may consider more than the convenience of the government in designating a site for an execution where, as here, the law of the state in which a death sentence was imposed does not provide for capital punishment." *Id.* at 282. The court noted that the Department of Justice has at least twice attempted to have section 3596 amended to provide for a uniform system for implementing federal death sentences, but has failed. *Id.* These "unsuccessful efforts indicate that Congress has

4

not been persuaded that the convenience of the government in having all federal executions occur at a single location inevitably outweighs the possible countervailing considerations in a particular case." *Id.*

The Government is effectively attempting to sneak its proposed uniform system through the back door by requesting that district courts in states that do not authorize the death penalty all designate Indiana as the state in which to implement federal death sentences. It should not be permitted to usurp the power that Congress has vested in this Court to designate a state in which to implement Mr. Higgs's sentence, as that would violate the non-delegation doctrine. *See, e.g.*, *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) ("[A] statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (alterations in original)). Here, Congress has repeatedly *declined* to adopt the Government's preferred procedure via statute. This Court should not reflexively adopt it, particularly where the Government has not even bothered to provide a meaningful rationale for its selection in its motion.

The *Sampson* court identified numerous countervailing considerations that counseled in favor of Sampson's execution being held in New Hampshire, which borders Massachusetts. Among the considerations were that New Hampshire would be more convenient for Sampson's relatives, the relatives of the victims, the prosecution and defense attorneys, the local media, and the public at large in the community most directly affected by the crimes. *Sampson*, 300 F. Supp. 2d at 281-82.

Each of the above factors identified in *Sampson* is equally present in Mr. Higgs's case. The victims' families, Mr. Higgs's family, the attorneys for Mr. Higgs and the Government, the

5

local press, and the community most impacted by this case are located primarily in the Washington, D.C. area (and nearly all are located in the Northeast Corridor more broadly). The only connection to Indiana that the Government has articulated is that Mr. Higgs happens to be incarcerated there. The equities here strongly counsel in favor of a designation that is more meaningfully connected to this case.

Assuming *arguendo* that the Court has authority to modify the judgment, Mr. Higgs respectfully requests that the Court designate Virginia instead of Indiana. Virginia authorizes the death penalty as a punishment, *see* Va. Code § 18.2-10(a), and utilizes either lethal injection or electrocution as the method of execution. Va. Code § 53.1-234. Virginia borders Maryland and is located in close proximity to the place in which the crimes were committed and to the people most impacted by the case.

Having the execution take place in close proximity to interested parties is particularly important in light of the ongoing COVID-19 pandemic. In July, the Government elected to move forward with the first federal execution in seventeen years, and ultimately executed three people in five days in the midst of the pandemic. Hailey Fuchs, *For Third Time This Week, the Federal Government Carries Out an Execution*, N.Y. TIMES , July 17, 2020, *available at* https://www.nytimes.com/2020/07/17/us/dustin-honken-federal-execution.html (last visited August 17, 2020). Several victims' family members in one of the cases were forced to miss attending the execution against their wishes because of the distance between their homes and USP-Terre Haute, combined with the effects of the pandemic:

> Monica Veillette and her family didn't want Danny Lee to die for killing her aunt and cousin, but they still felt a moral obligation to witness the execution.
>
> The coronavirus pandemic prevented them from traveling to do that – the final emotional blow in a 24-year saga of grief that began when they got the call that

> the bodies of three of their family members had been pulled from an Arkansas bayou.
>
> The insult to the injury was no phone call, warning or explanation from the U.S. Department of Justice about the decision to move forward with Lee's execution last week. The last-minute stays and legal filings left the killer waiting, strapped to a gurney, for four hours in the early hours of the morning.
>
> Veillette, who lives in Spokane, Wash., said she won't forgive Attorney General William Barr for exploiting her pain and that of her family for his desired ends.
>
> "William Barr stole that piece of our healing from us by pushing this [execution] forward during a pandemic when we couldn't safely attend," she said.

Tony Holt, *Family says actions on Lee execution add to grief*, N.W ARK. DEMOCRAT-GAZETTE, July 19, 2020, *available at* https://www.nwaonline.com/news/2020/jul/19/family-says-actions-on-execution-add-to-grief/ (last visited August 17, 2020). The Court should not designate a location that will require long-distance travel for the vast majority of the most closely impacted individuals in this case.

More broadly, "the execution of a human being by the state is perhaps the most solemn and significant act a government can perform. It should not be reduced to an invisible, bureaucratic function." *Sampson*, 300 F. Supp. 2d at 280. But reducing Mr. Higgs's execution to an invisible, bureaucratic function is precisely what the Government is attempting to do. It has filed a motion that is less than two pages in length and almost entirely lacking in argument or analysis in seeking this Court's rubber stamp of its preferred location.

The three executions that were carried out at USP-Terre Haute in July give every reason to think that Mr. Higgs's execution would be the "secret ceremony in the remote Midwest," *id.* at 283, of which the *Sampson* court warned were this Court to designate Indiana:

> Heavily armed guards encircled the small execution building inside the prison. A high black curtain was also draped around the building, completely blocking views of the death house.

7

>Rules for journalists attending the execution include that they leave their pens and notebooks at a media center before heading to the death-chamber facility. Prison officials provided pens and paper only minutes before the executions began.

*Anti-Death Penalty Groups Sue, Say Roadblocks Impede Speech*, N.Y. TIMES, Aug. 4, 2020, *available at* https://www.nytimes.com/aponline/2020/08/04/us/ap-us-federal-executions-.html (last visited August 17, 2020).

In sum, the Government offers no compelling reason for this Court to designate Indiana to implement Mr. Higgs's execution and numerous compelling reasons counsel in favor of designating Virginia, instead.

WHEREFORE, for the reasons stated above, the Court should deny the Government's request to amend Mr. Higgs's judgment of conviction. To the extent any source of authority permits the Court to do so, it should designate Virginia as the state in which to implement Mr. Higgs's execution.

Respectfully Submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
   for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org

/s/ Stephen H. Sachs
Stephen H. Sachs
Roland Park Place
830 W. 40th Street, Apt. 864
Baltimore, MD 21211
(410) 243-4589
stephenhsachs@gmail.com

Dated:  August 18, 2020

**CERTIFICATE OF SERVICE**

I, Stephen H. Sachs, hereby certify that on this 18th day of August, 2020, I electronically filed the foregoing document using the Court's CM/ECF system. Electronic notice will be provided to the following individuals:

Sandra Wilkinson  
Debra Dwyer  
Office of the United States Attorney  
36 S. Charles St., Fourth Floor  
Baltimore, MD 21201

Sujit Raman  
Office of the United States Attorney  
6500 Cherrywood Lane, Ste. 400  
Greenbelt, MD 20770

James Crowell, IV  
United States Department of Justice  
Executive Office for United States Attorneys  
950 Pennsylvania Ave., NE, Room 2443  
Washington, DC 20530

/s/ Stephen H. Sachs  
Stephen H. Sachs